# IN THE UNITED STATES DISTRICT COURT FOR THE WESTERN DISTRICT OF OKLAHOMA

| | | |
|---|---|---|
| BELEN LOCKE, an individual, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| -vs- | ) | Case No. CIV-20-0099-F |
| | ) | |
| THE CITY OF CHOCTAW, | ) | |
| Oklahoma, a governmental entity, | ) | |
| et al., | ) | |
| | ) | |
| Defendants. | ) | |

## ORDER

This action arises out of plaintiff Belen Locke's employment as a police officer at the Choctaw Police Department and a subsequent failure to re-hire her as a police officer.[1]  Four motions to dismiss, all brought under Rule 12(b)(6), Fed. R. Civ. P., are before the court.  They are addressed in the following sequence:

Robert Bosse's motion to dismiss.  Doc. no. 7.  Response brief, doc. no. 12.  Reply brief, doc. no. 14.

Dan Weidemann's motion to dismiss.  Doc. no. 8.  Response brief, doc. no. 11.  Reply brief, doc. no. 15.

Robert Snyder's motion to dismiss.  Doc. no. 18.  Response brief, doc. no. 19.  Reply brief, doc. no. 20.

The City of Choctaw's (The City's) motion to dismiss.  Doc. no. 5.  Response brief, doc. no. 10.  Reply brief, doc. no. 13.

---

[1] This action was removed from state court.  The amended petition (doc. no. 1-3) is referred to as "the complaint."

For the reasons stated in this order, the individual defendants' motions will be granted, and the City's motion will be granted in part and denied in part.

## I. Standards

The inquiry under Rule 12(b)(6) is whether the complaint contains enough facts to state a claim for relief that is plausible on its face. Ridge at Red Hawk, L.L.C. v. Schneider, 493 F.3d 1174, 1177 (10th Cir., 2007), quoting Bell Atlantic Corp. v. Twombly, 550 U.S. 544, 547 (2007). To survive a motion to dismiss, a plaintiff must nudge his claims across the line from conceivable to plausible. Id. The mere metaphysical possibility that some plaintiff could prove some set of facts in support of the pleaded claims is insufficient; the complaint must give the court reason to believe that this plaintiff has a reasonable likelihood of mustering factual support for these claims. Ridge at Red Hawk, 493 F.3d at 1177.

In conducting its review, the court assumes the truth of plaintiff's well-pleaded factual allegations and views them in the light most favorable to the plaintiff. Id. Pleadings that are no more than legal conclusions are not entitled to the assumption of truth; while legal conclusions can provide the framework of a complaint, they must be supported by factual allegations. Ashcroft v. Iqbal, 556 U.S.662, 664 (2009). When there are well-pleaded factual allegations, a court should assume their veracity and then determine whether they plausibly give rise to an entitlement to relief. Id. The court will disregard mere "labels and conclusions" and "[t]hreadbare recitals of the elements of a cause of action" to determine if what remains meets the standard of plausibility. Twombly, 550 U.S. at 555; Iqbal, 556 U.S. at 678.

While the statute of limitations is an affirmative defense, when the dates given in a complaint make clear that the right sued upon has been extinguished, the plaintiff has the burden of establishing a factual basis for tolling the statute. Aldrich v. McCulloch Properties, Inc., 627 F.2d 1036, 1041 at n.4 (10th Cir. 1980). When this

order dismisses claims based on limitations, the court has found that the pleadings (the complaint and the underlying charge, which is central to the complaint) make clear, on their face, that the right sued upon has been extinguished and that plaintiff has not identified a factual basis for tolling.

When qualified immunity is raised at the Rule 12(b)(6) stage, it is the defendant's conduct as alleged in the complaint that is scrutinized. *See*, Doe v. Woodard, 912 F.3d 1278, 1288 (10th Cir. 2019), citing Behrens v. Pelletier, 516 U.S. 299, 309 (1996). Thus, it is the pleadings, not the evidence or the actual facts, that determine the issue. The court must allow plaintiff an opportunity to come forward with either alleged facts, or proposed amended factual allegations, which show the defendant's alleged conduct violated the law, and that the law in question was clearly established when the alleged violation occurred.[2] Pueblo Neighborhood Health Centers, Inc. v. Losavio, 847 F.2d 642, 646 (10th Cir. 1988). Unless such a showing is made, the defendant prevails on his qualified immunity defense. *Id*. Relying on generalizations or on the broad history of a constitutional amendment or statute is insufficient for determining that a right is clearly established. *See*, Ashcroft v. Al-Kidd, 563 U.S. 731, 742 (2011) ("We have repeatedly told courts … not to define clearly established law at a high level of generality. … The general proposition, for example, that an unreasonable search or seizure violates the Fourth Amendment is of little help in determining whether the violative nature of particular conduct is clearly established.")

---

[2] Plaintiff was given that opportunity. Qualified immunity was raised in the individual defendants' moving briefs, to which plaintiff had the opportunity to respond by identifying alleged facts, or by proposing amended factual allegations, to meet her burden.

## II. The Charge

Plaintiff filed the underlying charge (doc. no. 10-1) with the Oklahoma Attorney General's Office of Civil Rights Enforcement (the OCRE). The charge, which is central to the complaint, is not outside the pleadings for purposes of a Rule 12(b)(6) motion and may be considered by the court.[3] The complaint alleges that plaintiff contacted the OCRE on August 23, 2018. Doc. no. 1-3, ¶ 21. Accordingly, the court uses August 23, 2018 as the date on which plaintiff filed her charge with the OCRE.

## III. The Complaint

The complaint is divided into an introductory section which alleges a sequence of events, followed by four "causes of action" in which plaintiff sets out various types of claims or legal theories of recovery. The complaint alleges a mix of claims under the Oklahoma Anti-Discrimination Act (the OADA); 42 U.S.C. § 2000e *et seq.* (Title VII); and 42 U.S.C. § 1981. Although the complaint does not mention 42 U.S.C. § 1983, the court construes all § 1981 claims as asserted through § 1983.[4] To the extent defendants' arguments for dismissal are based on the complaint's failure to mention § 1983, those arguments are rejected.

The facts alleged in the introductory portion of the complaint (¶¶ 1-27) are incorporated in each cause of action. The paragraphs of the complaint exclusive to each cause of action (first: ¶¶ 28-34; second: ¶¶ 35-40; third: ¶¶ 41-44; fourth ¶¶ 45-49) show that the first and third causes of action refer to a hostile work environment, specifically, a racially hostile work environment. Accordingly, the first and third causes of action are construed to include a claim for a racially hostile

---

[3] *See*, Prager v. LaFaver, 180 F.3d 1185, 1188-89 (10th Cir. 1999) (where defendant submitted an indisputably authentic copy of a document referred to in, and central to, the complaint, document was not outside the pleadings).

[4] Section 1981 claims are enforceable through § 1983. Bolden v. City of Topeka, Kan., 441 F.3d 1129 (10th Cir. 2006), discussing Jett v. Dallas Independent School Dist., 491 U.S. 701, 731 (1989).

work environment, and all other claims are construed to allege discrete acts of discrimination or retaliation.

## IV. Bosse, Weidemann and Snyder's Motions to Dismiss

The individual defendants are Bosse, Weidemann and Snyder, all of whom are alleged to be city officials or employees. The complaint is not clear with respect to which individual defendants are named in each cause of action. Nevertheless, the court rejects the individual defendants' arguments for dismissal on this ground. For purposes of this order, the court will simply assume that Bosse, Weidemann and Snyder (as well as the City) are named in all four causes of action.

The complaint does not specify whether the claims against these defendants are individual or official capacity claims. When a complaint fails to specify the capacity in which a government official is sued, the court looks to the substance of the pleadings and the course of the proceedings to determine whether the suit is for individual or official liability. Pride v. Does, 997 F.2d 712, 715 (10th Cir. 1993). Doing so here, the court construes all claims against Bosse, Weidemann and Snyder as individual capacity claims. *See*, doc. no. 1-3, ¶¶ 3-5 and the caption of complaint (all identifying these defendants as "an individual"); doc. no. 11, p. 19[5] (plaintiff states she "brought her claim against Weidemann in his individual capacity, not his official capacity"). Moreover, there is no need for official capacity claims because the court construes each of plaintiff's four causes of action to include the City as a defendant.

With these general rulings in place, the court moves on to the specific claims alleged against Bosse, Weidemann and Snyder.

Except for the portion of the second cause of action that is brought under §1981, all four causes of action are brought under the OADA or Title VII. Claims

---

[5] This order uses the electronic case filing (ecf) page numbers found at the top of each page.

are not actionable under the OADA or Title VII except as against plaintiff's employer. The complaint alleges that plaintiff was employed by the City (not the individual defendants). Doc. no. 1-3, ¶ 8. Accordingly, Bosse, Weidemann and Snyder are entitled to dismissal from the first, third and fourth causes of action, and also from the portion of the second cause of action that brings claims under the OADA—a result plaintiff concedes.

This leaves for consideration the § 1981 claims alleged within the second cause of action. Of the paragraphs of the complaint that pertain exclusively to the second cause of action, only ¶¶ 39 and 40 describe any conduct by any defendant.

Paragraph 39 alleges that "Since the first part of Plaintiff's training she has been forced to endure discrimination due to her race and gender which has been permitted, tolerated and condoned by the highest levels of supervision with[in] the police force, including now Chief Dan Weidemann." Thus, ¶ 39 alleges gender and race discrimination.

Paragraph 40 alleges that defendants denied plaintiff the opportunity to contract "by denying her [re-]employment under the pretext she needed to complete the entire application process when current male employees were not required to do so." Thus, ¶ 40 alleges only gender discrimination.[6]

Section 1981 relates not to gender discrimination but to <u>racial</u> discrimination in the making and enforcement of contracts. *See*, 42 U.S.C. § 1981 ("All persons…shall have the same right…to make and enforce contracts…as is enjoyed by white citizens…."). Accordingly, all § 1981 claims that rest on the portion of ¶ 39 that refers to gender discrimination, or that rest on ¶ 40, necessarily fail. Bosse, Weidemann and Snyder are entitled to dismissal from all gender-based claims

---

[6] Consistent with ¶ 40, the introductory portion of the complaint alleges (in ¶ 20) that when plaintiff attempted to reapply to work as a police officer, she was told she needed to go through the entire application process "when male officers were not required to do so."

brought against them under § 1981.  This ruling disposes of the § 1981 claim against Bosse in its entirety because the only conduct by Bosse that is alleged with particularity is gender-based.  Doc. no. 1-3, ¶¶ 12, 17.

The race-based § 1981 claims against Weidemann and Snyder are alleged in ¶ 39.  Standing alone, ¶ 39 (quoted earlier) is conclusory.  But the introductory portion) of the complaint provides the particulars of the race-based §1981 claims against Weidemann and Snyder, alleging as follows.

> -- Weidemann:  In approximately May of 2014 through July of 2014, certain race-based comments were made, some or all of which were reported to Weidemann or others but nothing was done. Doc. no. 1-3, ¶¶ 13-18.

> -- Snyder: In approximately May of 2014 through July of 2014, certain race-based comments were made by Snyder and reported to Weidemann or others but nothing was done.  *Id*. at ¶ 14.

While these allegations provide particularity for purposes of the § 1981 claim, they also show that the only non-conclusory and race-based conduct relevant to Snyder and Weidemann occurred more than four years before this action was filed in state court on December 6, 2019.[7]  Doc. no. 1-2 (original complaint in state court). Borrowing Oklahoma's statute of limitations for an action for injury to the rights of another, courts have applied a two-year statute of limitations to § 1981 claims against state actors.  *See*, *e.g.*, Barnes v. Wagoner County Rural Water District No. 4, 2016 WL 1637313, *2 (E.D. Okla. 2016).  The individual defendants' response briefs indicate there is a debate over whether a two- or four-year limitation period

---

[7] Paragraphs 12-18 are construed as alleging that all comments described with particularity in the complaint were made and reported in May of 2014 through July of 2014, during plaintiff's initial training.  Thus, it is clear from the face of the complaint that May of 2014 through July of 2014 is the period relevant to the race-based § 1981 claims.  The second cause of action does not allege a racially hostile work environment claim, and there is no continuing violation theory under § 1981. Thomas v. Denny's, Inc., 111 F.3d 1506, 1514 (10th Cir. 1997).

applies to § 1981(b) claims (claims that rely on post-contract-formation conduct) against state actors. The court need not resolve that issue because, whether a two- or four-year period applies, the conduct in question is time-barred as the basis of the §1981 claim alleged against Snyder and Weidemann.

Finally, Bosse, Weidemann and Snyder assert qualified immunity as a defense to the § 1981 claims. Plaintiff, in response, makes arguments based on broad generalizations.[8] She has not carried her burden to cite clearly established law which put defendants on notice, at the time of the alleged events, that they could be liable for violations of plaintiff's rights protected by § 1981 as a result of gender discrimination, or as a result of discrete acts of discrimination consisting of certain race-based comments (made by Snyder or others and reported to Weidemann) along the lines of those described in the complaint. Consequently, the individual defendants are entitled to qualified immunity with respect to the § 1981 claims.

In summary, Bosse, Weidemann and Snyder are entitled to dismissal from the Title VII and OADA claims alleged against them in the first, third and fourth causes of action, as well the OADA claims alleged against them in part of the second cause of action. This is the result because none of these defendants is alleged to be plaintiff's employer, a ground for dismissal which plaintiff concedes. These defendants are also entitled to dismissal from the § 1981 claims alleged against them within the second cause of action. This is the result because gender discrimination is not actionable under § 1981, and because the only non-conclusory, race-based conduct attributed to these defendants is time-barred on its face as the basis of a § 1981 claim. In addition, these defendants are entitled to qualified immunity with respect to the § 1981 claims. Absent amendment, these rulings, taken together,

---

[8] Some of plaintiff's arguments do not relate to qualified immunity but relate, instead, to sovereign immunity and the limited waivers of that immunity found in the Oklahoma Governmental Tort Claims Act. Sovereign immunity has not been asserted.

entitle Bosse, Weidemann and Snyder to dismissal from all of the claims alleged against them in this action.

## V.   The City's Motion to Dismiss

*A.   The first cause of action is brought against the City under the OADA.*

The first cause of action alleges the following OADA claims against the City, limited in the manner described in (1) through (4).

(1).   Racially hostile work environment claim (doc. no. 1-3, ¶¶ 29, 31) limited to the period plaintiff was employed as a police officer (May of 2014 until July of 2017), alleged against the City under the OADA.

The racially[9] hostile work environment claim brought against the City under the OADA is limited to the period during which plaintiff was employed as a police officer.[10]  This limitation is apparent from the pertinent allegations.[11]  For example, the first cause of action alleges that plaintiff "chose to no longer endure the hostile environment and transferred to the Reserve status due to the intolerable racially charged work environment." *Id.* at ¶ 31.  Likewise, the introductory portion of the complaint alleges (twice) that plaintiff was employed as a police officer until she

---

[9] The first cause of action (in ¶¶ 29, 31) refers to a work environment which was "racially hostile" and "racially charged." It refers to no other type of hostile work environment claim.  (Paragraph 31 alleges that "racial and misogynistic comments created a constructive termination." The reference to "misogynistic comments" relates to the constructive termination claim addressed in section (2).)

[10] Plaintiff could not have plausibly alleged a hostile environment claim, or a continuing violation theory, spanning the time she was employed as a police officer, the time she served on reserve status, all the way through to the time she was not re-hired.  Plaintiff's arguments to the contrary are rejected.  *See*, Holmes v. Utah Dept. of Workforce Services, 483 F.3d 1057, 1064 (10th Cir. 2007) (Holmes' departure from Cedar City office was an intervening act which separated Holmes from the allegedly hostile work environment, so incidents could not be linked to constitute one sexually hostile work environment;  discussing National R. R. Passenger Corp. v. Morgan, 536 U.S. 101 (2002)).

[11] Paragraph 33 refers to conduct "[s]ubsequent to the constructive term[ination]," *i.e.* after July of 2017, but ¶ 33 relates to the retaliation claim addressed in section (3).

transferred to reserve status due to the intolerable racially charged work environment. *Id*. at ¶¶ 10-11. The introductory allegations also clarify that plaintiff was employed as a police officer from May 2014 until July 2017. *Id*. at ¶ 10. That period encompasses the time during which all of the race-based comments detailed in the complaint were allegedly made. *Id*. at ¶¶ 13-15.[12]

To timely exhaust administrative remedies with respect to an OADA claim, a charge must be filed with the OCRE within 180 days of the alleged unlawful practice. 25 O.S. Supp. 2013 § 1350(B). Because the complaint alleges plaintiff was employed "until July 2017," the court will assume that plaintiff was employed as a police officer until July 31, 2017 (the latest possible date consistent with the allegations). The complaint alleges that plaintiff contacted the OCRE on August 23, 2018. That date is 389 days after July 31, 2017. Thus, it is clear from the allegations that plaintiff did not timely exhaust her administrative remedies with respect to a racially hostile work environment claim covering the period she worked as a police officer. This claim, alleged against the City under the OADA in the first cause of action, is barred on its face under the statute of limitations that governs the time for filing a charge with the OCRE.[13] The City is entitled to dismissal of this claim.

---

[12] The gist of the alleged comments is that: plaintiff's training officer (non-party Brewer) pointed to a Hispanic gardener and asked plaintiff "is that your cousin?"; supervisor Snyder made discriminatory comments, including asking plaintiff, "when are you going to make me some of that good Mexican food?"; and Brewer told plaintiff she needed to mow his yard and clean his house.

[13] Plaintiff's arguments that this and other claims brought under the OADA or Title VII were timely exhausted is based, in part, on a letter from the OCRE to the City's counsel. Doc. no. 10-2. The letter is outside the pleadings; it is not referred to in the complaint nor is it central to the complaint. Accordingly, the court does not consider it. While the court could convert the motions (to summary judgment motions) and consider the letter, it declines to do so as the letter would make no difference to the outcome. A letter stating that an investigative agency has jurisdiction does not change the result here. Here, the issue is whether the particular sub-set of claims alleged by plaintiff in this judicial action are claims which were timely exhausted.

(2).  Constructive termination claims based on termination in July of 2017 (doc. no. 1-3, ¶¶ 31, 32), alleged against the City under the OADA.

Paragraphs 31 and 32 of the first cause of action allege OADA claims against the City based on plaintiff's constructive termination in July of 2017.  Paragraph 31 alleges that "racial and misogynistic comments created a constructive termination."  Because ¶ 32 references plaintiff's race, color, sex and national origin, the court construes it to allege that the constructive termination was based on each of these categories of discrimination.  The allegations make clear that plaintiff failed to timely exhaust her administrative remedies with respect to these discrete discrimination claims.  Plaintiff alleges she was constructively discharged in July of 2017.  Assuming her constructive termination occurred on July 31, 2017, that date is more than 180 days before the alleged date of her initial contact with the OCRE on August 23, 2018.  These OADA claims are barred on their face under the statute of limitations that governs the time for filing a charge with the OCRE.  The City is entitled to dismissal of these claims.

(3).  Retaliation claims (doc. no. 1-3, ¶ 33) based on denial of security work in May of 2016, and based on a refusal to re-hire plaintiff as a police officer in April of 2018 unless she went through the entire hiring process, both of which claims are alleged against the City under the OADA.

 Paragraph 33 alleges that "Subsequent to the constructive term[ination]," the City "retaliated against Plaintiff by denying Plaintiff security details" and by "refusing to re-hire her unless she went through the entire hiring process" which

others were not required to do.[14]  *Id*. at ¶ 33.  Thus, ¶ 33 alleges two discrete acts of retaliation by the City under the OADA.[15]

The complaint does not allege the date or dates on which plaintiff was denied security work.  However, the charge submitted to the OCRE provides the time-frame.  There, plaintiff charges that "[i]n May of 2016, I complained to Chief Connie Clay that a local school had awarded contracts to Snyder to work security at football games and not to me.  I believe I was not awarded the school contract in retaliation for my complaints against Snyder."  Doc. no. 10-1, p. 2, ¶ 7.  Assuming this event occurred on the last day in May of 2016, plaintiff's claim for retaliatory denial of security work, brought against the City under the OADA in the first cause of action, was not timely exhausted.  This is because May 31, 2016 is much more than 180 days before plaintiff allegedly contacted the OCRE on August 23, 2018.  This retaliation claim is barred on its face under the statute of limitations that governs the time for filing a charge with the OCRE.  The City is entitled to dismissal of this claim.

Next, the court addresses the retaliation claim alleged in ¶ 33 that is based on the City's refusal to re-hire plaintiff as a police officer.  No allegations in the first cause of action or in the introductory portion of the complaint describe when the City refused to re-hire the plaintiff as a police officer.[16]  However, the charge filed

_____

[14] Paragraph 33 alleges this was not a requirement for "white male officers," an allegation only marginally relevant to a retaliation claim, which is based on protected activity, not race or gender.

[15] The retaliation claims alleged in ¶ 33 are based on the same protected conduct that is relevant to the retaliation claims alleged in the fourth cause of action.  As explained in this order's discussion of the fourth case of action, the protective conduct consists of plaintiff reporting race- or ethnicity-based comments in approximately May of 2014 through July of 2014.

[16] Later in the complaint (in a paragraph not included by reference in the first cause of action, although the court still considers it), plaintiff alleges that "[s]ince April of 2018," the City denied her re-employment using the pretext that she needed to complete the entire application process.  Doc. no. 1-3, ¶ 40.  Standing alone, that allegation is conclusory (and ambiguous with respect to

with the OCRE provides the time-frame.  There, plaintiff charges that "In April of 2018, I desired to return to work as a full time police officer.  I feel I was discriminated against on the basis of my gender because I was required to go through the complete application process, while other reserve officers were not."  Doc. no. 10-1, p. 2, ¶ 7.[17]  (Although the charge's description of this event refers to gender discrimination, plaintiff checked the box on the charge for "retaliation.")  Any date in April of 2018, when the refusal to re-hire is charged to have occurred, comes within the 180-day period for bringing an OADA claim to the OCRE, which the complaint alleges plaintiff did on August 23, 2018.  Accordingly, the OADA retaliation claim alleged against the City in ¶ 33 of the first cause of action was timely exhausted to the extent it is based on allegations that, in April of 2018, the City refused to re-hire plaintiff as a police officer and required her to go through the entire hiring process although other officers were not required to do so.  The City's motion to dismiss this claim will be denied.

(4).  <u>Refusal to hire claims (doc. no. 1-3, ¶ 34) based on denial of security work to plaintiff in May of 2016, and refusal to re-hire plaintiff as a police officer in April of 2018 unless she went through the entire hiring process, both of which claims are alleged against the City under the OADA.</u>

In ¶ 34, plaintiff alleges that "such acts"—which the court interprets as a reference to the denial of security work in May of 2016, and the refusal to re-hire in

---

the timing of the refusal to re-hire because, as used in ¶ 40, "since" could mean after April of 2018, or in and beyond April of 2018.) As stated in the text, the charge provides clarity, describing the failure to re-hire as occurring <u>in</u> April of 2018.  In addition, the narrative portion of the charge does not mention a failure to re-hire after April of 2018, so plaintiff did not timely exhaust her administrative remedies with respect to any such event.  Reading the charge with the complaint, the court construes the pleadings (including but not limited to the first cause of action) to allege that the failure to re-hire occurred in April of 2018.

[17] Paragraph 33 adds the allegation that "white male officers" were not required to go through the entire hiring process. Again, retaliation is based on protected activity, and allegations about race or gender are only marginally relevant.

April of 2018 (as described in ¶ 33)—"qualify as a failure or refusal to hire and thereby Defendant discriminated against the Plaintiff with respect to compensation and the terms, conditions, privileges or responsibilities of employment, because of her race, color, sex, and national origin." Accordingly, ¶ 34 alleges discrete claims of race, color, sex and national origin discrimination based on denial of security work to the plaintiff in May of 2016 and based on the City's refusal to re-hire plaintiff as a police officer in April of 2018 unless she went through the entire hiring process.

As already stated, plaintiff did not timely exhaust her administrative remedies with respect to claims based on the denial of security work in May of 2016. This is because May of 2016, the month when the charge indicates this occurred, was more than 180 days before plaintiff allegedly contacted the OCRE on August 23, 2018. Consequently, ¶ 34's discrete discrimination claims of race, color, sex and national origin discrimination, brought against the City under the OADA and based on the denial of security work in May of 2016, are barred on their face under the statute of limitations that governs the time for filing a charge with the OCRE. The City is entitled to dismissal from these claims.

On the other hand, ¶ 34's discrete claims of race, color, sex and national origin discrimination that are based on allegations that the City refused to re-hire plaintiff as a police officer in April of 2018 unless she completed the entire hiring process (although other employees were not required to do so) are claims which were timely exhausted under the OADA. This is because the refusal to re-hire, which is charged to have occurred in April of 2018, is within 180 days of the date plaintiff allegedly contacted the OCRE on August 23, 2018. The City's motion to dismiss these claims will be denied.

Together, the court's rulings regarding the claims alleged against the City in the first cause of action mean that all such claims are dismissed except the following claims, which are not dismissed.

> -- An OADA retaliation claim, and OADA discrimination claims based on plaintiff's race, color, sex and national origin, to the extent such retaliation and discrimination claims are based on allegations that, in April of 2018, plaintiff was retaliated against, and discriminated against, when the City refused to re-hire her as a police officer and required her to go through the entire hiring process although white, male officers were not required to do so.

*B. The second cause of action is brought against the City under the OADA and § 1981.*

Of the paragraphs of the complaint that pertain exclusively to the second cause of action, only ¶¶ 39-40 refer to any conduct by the City (or any other defendant).

Paragraph 39 alleges that "[s]ince the first part of Plaintiff's training she has been forced to endure discrimination due to her race and gender which has been permitted, tolerated and condoned by the highest levels of supervision with[in] the police force, including now Chief Dan Weidemann." Standing alone, ¶ 39 is conclusory. But the introductory portion of the complaint alleges, with particularity, certain comments related to plaintiff's race[18] and gender,[19] as well as the City's lack of corrective action. Doc. no. 1-3, ¶¶ 12-18. All of those comments and conduct allegedly occurred in approximately May of 2014 to July of 2014. *Id.* Plaintiff allegedly contacted the OCRE on August 23, 2018. Thus, none of the comments or conduct alleged with particularity were timely exhausted as the basis of an OADA

---

[18] *See*, n. 12, *supra* (race-based comments).

[19] The gist of the alleged comments is that Bosse told (non-party) Anthony Libel that females should not be in law enforcement and that he would not work with female officers. Libel reported Bosse's comments to Weidemann and supervisors, but no corrective action was taken. Bosse voiced resentment about being partnered with a female. Doc. no. 1-3, ¶¶ 12, 17.

claim against the City for discrete acts of race or gender discrimination. These claims are barred on their face under the statute of limitations that governs the time for filing a charge with the OCRE. The City is entitled to dismissal of these claims.

Paragraph 39's reference to gender discrimination also incorporates the introductory allegations (in ¶ 19)[20] that subsequent to plaintiff's constructive termination as a police officer, she was denied security work because she had used sick leave, a "punishment" not imposed on male officers. The charge dates the denial of security work to May of 2016 (doc. no. 10-1, p. 2, ¶ 4), and plaintiff alleges she contacted the OCRE on August 23, 2018. Accordingly, this OADA claim, which alleges gender discrimination based on the denial of security work to plaintiff in May of 2016, was not brought to the OCRE within 180 days and was not timely exhausted. This OADA claim is barred on its face under the statute of limitations that governs the time for filing a charge with the OCRE. The City is entitled to dismissal of this claim.

Paragraph ¶ 40 alleges the City refused to re-hire plaintiff "under the pretext she needed to complete the entire application process when current male employees were not required to do so." That discrete act of gender discrimination is described in the charge as occurring in April of 2018,[21] which is within 180 days of the date plaintiff alleges she contacted the OADA on August 23, 2018. Accordingly, this claim, brought against the City under the OADA, was timely exhausted. The City's motion to dismiss this claim will be denied.

---

[20] Paragraph 39's reference to gender discrimination also incorporates ¶ 20, which relates to the claim that plaintiff was not re-hired due to gender discrimination and is therefore addressed under ¶ 40.

[21] The second cause of action alleges denial of re-employment "[s]ince April of 2018." Doc. no. 1-3, ¶ 40. For reasons already discussed, the court construes ¶ 40 to allege that the failure to re-hire occurred in April of 2018. *See*, n. 16, *supra*.

Having addressed all of the OADA claims alleged against the City in the second cause of action, the court turns to the § 1981 claims. Like the OADA claims, the § 1981 claims are based on the conduct alleged in ¶¶ 39 and 40.

Part of ¶ 39, and all of ¶ 40, assert gender-based claims. As stated earlier, gender-based claims are not actionable under § 1981. The City is entitled to dismissal of all gender-based claims alleged against the City under § 1981.

The next question is whether ¶ 39 (the only paragraph of the second cause of action that alleges race-based conduct) states plausible claims against the City for violation of rights protected by § 1981. Paragraph ¶ 39 is merely conclusory, but the introductory portion of the complaint alleges certain racially-charged comments made and reported to the City by the plaintiff in approximately May of 2014 through July of 2014. Those allegations provide particularity for purposes of the § 1981 claim. *See*, n. 12, *supra* (describing comments). However, all of those comments allegedly occurred more than four years before this action was filed on December 6, 2019.[22] As a result, the § 1981 claims alleged against the City under § 1981 are barred on their face under the applicable statute of limitations. (*See*, prior discussion of limitations applicable to § 1981 claims.) The City is entitled to dismissal of the § 1981 claims based on racially-charged comments made in approximately May of 2014 through July of 2014.

In summary, the City is entitled to dismissal of the § 1981 claims alleged against it in the second cause of action. These claims are either based on allegations of gender discrimination and are therefore not actionable under § 1981, or they are time-barred on their face because the race-based conduct relevant to these claims occurred more than four years before this action was filed.

---

[22] May of 2014 through July of 2014 is the relevant period for § 1981 claims based on the comments detailed in the complaint. *See*, n. 7, *supra* (no hostile work environment claim is alleged in second cause of action, and no continuing violation theory exists under § 1981).

These rulings mean that all claims alleged against the City in the second cause of action are dismissed except the following claim, which is not dismissed.

> -- Claim of gender discrimination brought against the City under the OADA, to the extent this claim is based on allegations that the City failed to re-hire plaintiff using the pretext that she needed to complete the entire application process although current, male employees were not required to do so.

*C. The third cause of action is brought against the City under the OADA and Title VII.*

Of the paragraphs of the complaint exclusive to the third cause of action, the only paragraphs that allege any conduct on the part of the City (or any other defendant) are ¶ 43 and ¶ 44.

Paragraph 43 alleges a racially hostile work environment claim. The third cause of action does not specify the dates during which the racially hostile work environment existed. But, as previously stated, the introductory portion of the complaint clarifies that the racially hostile work environment existed while plaintiff was employed as a police officer, from May of 2014 until July of 2017. Doc. no. 1-3, ¶¶ 10-11.

This order has already found that plaintiff failed to timely exhaust her administrative remedies for purposes of an OADA claim based on this racially hostile work environment. That ruling applies equally here, to the re-allegation of the hostile environment claim in the third cause of action. This OADA claim is barred on its face under the statute of limitations that governs the time for filing a charge with the OCRE. The City is entitled to dismissal of this claim.

The result is the same with respect to the racially hostile work environment claim alleged in ¶ 43 under Title VII. Oklahoma is a deferral state. Accordingly, Title VII requires claimants to file a charge of discrimination within 300 days of the alleged unlawful practice. Thuc Trans Sonic Indus. Servs., Inc., 767 F. Supp.2d

1217, 1224, n.1 (W.D. Okla. 2011). Thus, for purposes of the racially hostile work environment claim alleged against the City in the third cause of action under Title VII, plaintiff had 300 days from the last date of the hostile work environment to submit a charge to the OCRE. The third cause of action does not allege when the racially hostile work environment existed. But, as already explained, the introductory portion of the complaint makes clear that this claim covers the period during which plaintiff was a police officer. The complaint alleges, for example, that plaintiff was constructively terminated in July of 2017 due to the racially charged work environment. *Id.* at ¶ 10. The last possible day of the racially hostile work environment, July 31, 2017, is more than 300 days before the alleged date on which plaintiff contacted the OCRE, August 23, 2018. Accordingly, plaintiff failed to timely exhaust her Title VII claim for a racially hostile work environment covering the period she was employed as a police officer, May of 2014 to July of 2017. This claim against the City is barred on its face under the statute of limitations that governs the time for filing a charge for purposes of a Title VII claim. The City is entitled to dismissal of this claim.

Turning to ¶ 44, this paragraph addresses discrete acts of discrimination as the basis of OADA and Title VII claims against the City. Paragraph ¶ 44 alleges that: "Defendant Municipality…committed an unlawful employment practice in discriminating against Plaintiff because of her race, ethnicity and gender by failing to re-hire her as a full time Police Officer." Thus, ¶ 44 involves the same refusal to re-hire event that has been discussed before. Other paragraphs of the complaint (incorporated in the third cause of action as preceding paragraphs) include additional facts relevant to the discrimination claims that are alleged in the third cause of action based on the refusal to re-hire. Specifically, plaintiff alleges that she was not re-hired based on the pretext that she needed to complete the entire application process despite the fact that current, male, white, employees were not required to do so. *See,*

doc. no. 1-3, ¶ 20 (male officers), ¶ 33 (white male officers), ¶ 40 (current male employees).

Although the third cause of action does not date the refusal to re-hire, the charge describes it as occurring in April of 2018 (doc. no. 10-1, p. 2, ¶ 7), and this order has construed the pleadings to allege that it occurred at that time. *See*, n. 16, *supra.* Plaintiff allegedly contacted the OCRE on August 23, 2018. That date is within the 180-day period for purposes of the OADA claims that are based on the refusal to re-hire alleged in ¶ 44. That date is also within the 300-day period for purposes of the Title VII claims that are based on the refusal to re-hire alleged in ¶ 44.

Accordingly, plaintiff timely exhausted the OADA and Title VII claims of race, ethnicity and gender discrimination alleged against the City in ¶ 44, to the extent that such claims are based on allegations that the City refused to re-hire plaintiff in April of 2018 using the pretext that plaintiff was required to complete the entire application process although current, white, male employees were not required to do so. These claims will not be dismissed.

These rulings mean that of the claims alleged against the City in the third cause of action, all claims are dismissed except the following claims, which are not dismissed.

> -- Claims of race, ethnicity and gender discrimination brought against the City under the OADA and Title VII, to the extent that such claims are based on the City's alleged refusal to re-hire plaintiff as a full-time police officer in April of 2018, using the pretext that plaintiff was required to complete the entire application process although current, male, white employees were not required to do so.

D.  *The fourth cause of action brings retaliation claims against the City under the OADA and Title VII.*[23]

The fourth cause of action alleges retaliation claims against the City under the OADA and Title VII based on the retaliatory conduct described in ¶¶ 47 and 48. Before addressing that conduct, the court addresses the protected activity upon which these claims (as well as the other retaliation claims, alleged in the first cause of action) are based.

Paragraph 46 alleges that "Plaintiff opposed discrimination against her on the basis of race and ethnicity and reported such to her supervisor."  While that allegation is conclusory, the introductory portion of the complaint (in ¶ 16) alleges that plaintiff reported race- or ethnicity-based comments to Weidemann and the City. The race- and ethnicity-based comments referenced in ¶ 16 are described with particularity in ¶¶ 13-15 (and have already been summarized in this order).  The court construes the complaint as alleging that these comments were made, and reported to the City by the plaintiff, in approximately May of 2014 through July of 2014.[24]  The court finds that the retaliation claims alleged in the fourth cause of action (and elsewhere in the complaint) are based on protected activity consisting of plaintiff's reporting of race- and ethnicity-based comments in approximately May of 2014 through July of 2014.

Moving on to the retaliatory conduct itself, ¶ 47 alleges, first, that the City retaliated when it denied plaintiff security work.  The complaint does not make clear when the denial of security work occurred, but the charge clarifies that this occurred

---

[23] The heading of the fourth cause of action also refers to racial discrimination but those claims are alleged elsewhere; only retaliation claims are described in the paragraphs exclusive to the fourth cause of action.

[24] Paragraph 46 alleges that plaintiff's opposition to discrimination occurred "[s]ince August 2018 and continuing." This allegation is conclusory, and the complaint does not describe any protected activity that occurred in or after August of 2018.

in May of 2016, more than 300 days (and more than 180 days) before plaintiff allegedly contacted the OCRE on August 23, 2018. Accordingly, plaintiff did not timely exhaust her administrative remedies for purposes of the OADA or Title VII retaliation claims alleged in ¶ 47, to the extent that such claims are based on the denial of security work in May of 2016. These claims are barred on their face under the statute of limitations that governs the time for filing a charge for purposes of an OADA or Title VII claim. The City is entitled to dismissal of these claims.

Second, ¶ 47 alleges the City retaliated when it refused to re-hire plaintiff unless she went through the entire hiring process which was not a requirement for white, male officers. Paragraph 48 includes essentially the same allegation, alleging that plaintiff suffered a tangible adverse employment action when the City retaliated against her by refusing to re-hire her, and rejecting her, while re-hiring a white, male officer. The fourth cause of action does not allege when the City refused to re-hire the plaintiff, but the charge describes that event as occurring in April of 2018 (doc. no. 10-1, p. 2, ¶ 7), and the court has construed the pleadings to so allege. *See*, n.16, *supra.* The complaint alleges that plaintiff contacted the OCRE on August 23, 2018. Even if the City refused to re-hire plaintiff on April 1, 2018 (the earliest possible date in April), that date is within the 180-day period for filing a charge with the OCRE under the OADA. That date is also within the 300-day period for filing a charge under Title VII. Accordingly, plaintiff timely exhausted her administrative remedies with respect to the retaliation claims alleged against the City under the OADA and Title VII in the fourth cause of action, to the extent that such claims are based on the City's refusal to re-hire plaintiff in April of 2018 due to protected activity which consisted of plaintiff reporting race- and ethnicity-based comments in approximately May of 2014 through July of 2014. These claims will not be dismissed.

These rulings mean that of the claims alleged against the City in the fourth cause of action, all claims are dismissed except the following claims, which are not dismissed.

> -- Retaliation claims alleged against the City under the OADA and Title VII, to the extent that such claims are based on protected activity consisting of plaintiff's reporting of race- or ethnicity-based comments in approximately May of 2014 through July of 2014, which caused the City to retaliate by refusing to re-hire plaintiff as a police officer in April of 2018, using the pretext that plaintiff was required to complete the entire application process although others (white, male officers) were not required to do so.

## VI. <u>Leave to Amend</u>

The court denies plaintiff's request (embedded within her response briefs) for open-ended leave to amend. This action is too complex to permit open-ended leave to amend. Furthermore, the court is skeptical that plaintiff could propose any amendments that would not be futile under the rulings in this order. That said, if plaintiff seeks to add or re-allege any claims or allegations in a manner that would not be futile, she may move for leave to amend within fourteen days of the date of this order. Any proposed second amended complaint must re-state the allegations as they now exist, using the same paragraph numbers, and must underline any new matters. Failure to comply with these instructions, or with the rules that govern motions for leave to amend, will be grounds to deny the motion.

## VII. <u>Conclusion</u>

After careful consideration, the court rules as follows on the motions to dismiss.

All dismissals are under Rule 12(b)(6), Fed. R. Civ. P., and are with prejudice, given the reasons for dismissal. To summarize, the reasons for dismissal are that: only employers are subject to suit under the OADA and Title VII; gender

discrimination is not actionable under § 1981; the alleged race-based conduct is time-barred under § 1981; and plaintiff did not timely exhaust her administrative remedies under the OADA or Title VII with respect to her racially hostile work environment claim, or with respect to her discrete discrimination and retaliation claims based on constructive discharge, discriminatory comments, or denial of security work. In addition, the court has found that the individual defendants are entitled to qualified immunity with respect to the claims alleged against them under § 1981.

Bosse, Weidemann and Snyder's motions to dismiss are **GRANTED**. Doc. nos. 14, 15, 18. These defendants are **DISMISSED** from all claims the court has construed the complaint to allege against them. No claims remain for adjudication against Robert Bosse, Dan Weidemann, or Robert Snyder, and, absent a successful amendment, these defendants are **DISMISSED** from this action.

The City's motion to dismiss is **GRANTED IN PART** and **DENIED IN PART**. Doc. no. 5.

The City's motion is **GRANTED** to the following extent. Of the claims which the court has construed the complaint to allege against the City, all claims other than the claims identified below are **DISMISSED**.

The City's motion is **DENIED** to the extent it challenges the following claims, which survive this order:

> -- OADA and Title VII claims alleged against the City based on discrete acts of race, color, sex and national origin discrimination; OADA and Title VII retaliation claims alleged against the City based on protected activity consisting of plaintiff's reporting of race- or ethnicity-based comments in approximately May of 2014 through July of 2014; but only to the extent that all such discrimination or retaliation claims are based on allegations that in April of 2018, the City refused to re-hire plaintiff as a police officer, using the pretext that plaintiff was required to go through the entire hiring process

although white, male employees were not required to do so.

In other words, absent successful amendment, the claims that survive this order are based on the City's alleged failure to re-hire the plaintiff as a police officer in April of 2018. That alleged event is the basis of surviving discrete discrimination claims (race, color, sex, national origin) and retaliation claims, brought against the City under the OADA and Title VII. For purposes of the retaliation claim, the protected activity in question is plaintiff's alleged reporting of race- or ethnicity-based comments in approximately May of 2014 through July of 2014.

One cautionary note is in order. The fact that some of the claims plaintiff has attempted to plead are time-barred does not necessarily mean that the facts underlying those claims are not admissible in evidence in support of those claims that have survived the present motion. Questions of evidentiary admissibility, under a well-developed body of law guiding the court's discretion in these matters, are for another day.

IT IS SO ORDERED this 14th day of April, 2020.

STEPHEN P. FRIOT
UNITED STATES DISTRICT JUDGE

20-0099p001.docx